180 So. 597

## MOTOR TERMINAL & TRANSPORTATION CO. v. SIMMONS.

### 2 Div. 612.

Court of Appeals of Alabama.

March 8, 1938.

Rehearing Denied April 12, 1938.

D. G. Ewing, of Birmingham, for appellee.

SAMFORD, Judge.

This suit was originally filed against T. L. Johnson and another. This appellant was not one of the original parties defendant when originally filed but by amendment was brought in as a party on the 18th day of October, 1935.

The action claimed damages for the death of plaintiff's minor son, who was alleged to have been killed by virtue of the negligence of T. L. Johnson, while operating a motor vehicle between Orville and Selma, Ala. Appellant was not the owner of the motortruck which caused the accident, but said truck was owned and operated by the defendant T. L. Johnson. The evidence is without dispute that this defendant did not own the truck; that T. L. Johnson was not an employee of this defendant; and that this defendant had no direction or control over the truck at the time the accident occurred.

The Motor Terminal & Transportation Company, a corporation, and appellant here, was engaged at the time of the accident complained of in operating motortrucks as a transportation company between Selma Montgomery, and Birmingham, Ala. It was operating under its franchise from the Ala-

Earl McBee and Frank Hollifield, both of Birmingham, for appellant.

bama Public Service Commission, as provided in the Alabama Motor Carriers Acts, Gen.Acts 1931, p. 303, et seq. It had no franchise to operate, and did not operate, beyond Selma on the west and Birmingham on the north; its line running through Montgomery to the two points just above named.

The defendant, T. L. Johnson, against whom a judgment was rendered but who does not appeal and is, therefore, not a party to this appeal, was operating the motortruck on the occasion complained of, and was not an employee of this appellant and had not been for some two months.

It appears that the appellant received from the Montgomery Fair, Montgomery, Ala., at its warehouse in Montgomery, for transportation to Camden, Ala., certain articles of merchandise; that it took the shipment at Montgomery, transported it to Selma, where it was placed in a warehouse operated by it, to be further transported to Camden by some other agency. The shipment remained in the warehouse in Selma for three days, when the Montgomery Fair began to trace the shipment through appellant's warehouseman in Montgomery. This man, whose name was Whittle, was the agent of appellant at Montgomery, charged with the duty of receiving freight for shipment to be by appellant transported to the point of destination. Whittle got in communication with the defendant Johnson, over the phone, and ascertained that the shipment was still in the warehouse in Selma. After several conversations over the phone regarding the shipment, occurring between Johnson and Whittle and Johnson and the Montgomery Fair, Johnson loaded the merchandise on his own truck and carried it to Camden where it was delivered to the consignee. After delivery of the merchandise in Camden, Johnson started back to Selma, and at a point on the road near Orville ran into a wagon, upon which was plaintiff's son, injuring him, and from said injuries he died.

The foregoing statement of facts is taken from the statement in appellant's brief, which statement, not being challenged by appellee, will be taken to be accurate and sufficient for decision, under rule 10 of the Supreme Court which provides: "The statement will be taken to be accurate and sufficient for decision unless the opposing party, in his brief, shall make the necessary corrections or additions."

Allowing all inferences to be drawn from the facts, it appears that the appellant, a common carrier authorized to receive shipments of merchandise for transportation over its line and to be delivered to other agencies beyond its line for ultimate delivery, received the shipment of merchandise in the instant case, transported it to the end of its line, and there, whether by authorized contract between appellant and Johnson or by reason of the voluntary act of Johnson, the merchandise was transported from appellant's warehouse in Selma to the consignee at Camden.

Under any phase of the evidence, the appellant had no control over the instrumentality used in the transportation, and no control over the acts of the driver of the truck between Selma and Camden. Johnson and his truck were acting independently of the appellant in relation to the general public, and, therefore, to the plaintiff's intestate.

Having contracted with the consignor to deliver the merchandise at Camden, appellant would be liable as the initial carrier for its proper delivery through any agency which it might select at the terminus of its line. But this liability only applies to the shipment of merchandise, and appellant would not be liable for personal injuries caused by the agency to whom the merchandise was delivered.

There is an entire absence of any evidence creating the relationship of master and servant between appellant and Johnson, such as would authorize a verdict against this appellant on the principle of respondeat superior in an action based upon the negligence of the driver of the truck. Such relationship is to be determined, primarily, by whether or not it had the right to control the manner of doing the work. 10 Corpus Juris 878, par. 1313.

There is no evidence in this case which would authorize the jury to conclude that Whittle, employee of the appellant company at Montgomery, had any authority to employ Johnson as the agent of the appellant to make delivery of the merchandise then and there in the possession of appellant in its warehouse in Selma. The American decisions appear to be unanimous in holding that: "Where there is neither express nor implied authority given a servant to employ another, or a subsequent ratification of such employment, the relation of master and servant between master and one so employed does not exist, and master is not liable for negligent acts of the latter under the doctrine of respondeat superior." Emison

v. Wylam Ice Cream Co., 215 Ala. 504, 111 So. 216.

The general rule is that to constitute the relationship between master and servant for the purpose of fixing liability on the former for the acts of the latter under the doctrine of respondeat superior, it is indispensable that the right to select the person claimed to be a servant should exist. Furthermore, something more than the mere right of selection is essential to the relation. This right must be accompanied with the power and duty to control the alleged servant while in his employ; this, it is said, is one of the principal tests of the relation. If workmen do not stand in such relation to the person sought to be charged as to make it his duty to control them, they are not servants, and he is in no sense responsible for their acts under the doctrine of respondeat superior. 39 Corpus Juris 1269.

Under no phase of the evidence in this case can we find that the appellant here is liable to the plaintiff for the negligent act of Johnson, its codefendant; therefore, the trial court erred in refusing to give, at the request of this appellant, the general affirmative charge. And, for such error, the judgment is reversed and the cause is remanded.

Reversed and remanded.