52 So.2d 843 (1951)
219 La. 252
GIRVEN et al.
v.
MILLER.
No. 39951.
Supreme Court of Louisiana.
April 23, 1951.
Rehearing Denied May 28, 1951.
*844 Bentley G. Byrnes and Bernard J. Fonseca, New Orleans, for defendant-appellant.
Eugene Stanley, New Orleans, for plaintiff-appellee.
McCALEB, Justice.
Reverend Joseph A. Girven, a Catholic Priest of the Redemptorist Order, died in the city of New Orleans on September 26th, 1946, leaving as his only surviving relations a brother, Benjamin Girven, and a niece, Mrs. Vera M. Bevis. His succession was opened in the Civil District Court where his last will and testament, executed in olographic form, was filed and probated. By judgment rendered in these proceedings, the defendant, Rev. William A. Miller, also of the Redemptorist order, was recognized as universal legatee of the decedent and placed in possession of all of his property. The testament reads as follows:
"New Orleans, La., Jan. 3, 1946.
"This is my will
I leave all I die possessed of to Rev. William A. Miller, CSSR. to be disposed and administered according to my typed instructions, and I name Father William A. Miller, CSSR., Executor of my estate with full seizin and without bond.
"(Signed) Joseph A. Girven CSSR." On June 23rd 1948, plaintiffs, the brother and niece of decedent, brought this suit against Father Miller to have the will declared void and the judgment in the succession proceedings set aside. It is alleged that the will is null because (1) it contains a prohibited substitution and fidei commissum, reprobated by Article 1520 of the Civil Code, and (2) in that it is not complete within itself, requiring reference to another document which is not in olographic form.
The defendant met the charges of plaintiffs by way of exception of no cause of action, which was overruled, and later denied their validity in his answer. Thereafter, Benjamin Girven moved for and obtained a dismissal of his case with prejudice and the proceedings were carried to a conclusion by Mrs. Bevis as the sole plaintiff.
Following a hearing at which the typewritten instructions referred to in the will were produced by defendant, there was judgment in favor of Mrs. Bevis, annulling and setting aside the clause in the will bequeathing the property of the testator to Father Miller. The judge was of the opinion that this disposition was conditional and could not be given effect as the substance of the testator's wish was not expressed in olographic form but only in the typewritten instructions referred to in the testament.[1]
An examination of the will in the light of the applicable codal articles and jurisprudence satisfies us that it is a lawful disposition of the testator's entire estate to Father Miller and that the grounds of attack advanced by plaintiff are not well *845 founded. Indeed, we think that the suit should have been dismissed on the exception of no cause of action which has been reurged in this court by counsel for defendant. The bequest to Father Miller of "all I die possessed of" is absolute and institutes him as universal legatee of the estate. It is not rendered conditional, as found by the district judge, merely because the investiture of title is followed by the language "to be disposed and administered according to my typed instructions". These words are not limitations upon the title of Father Miller; they are expressions of the testator's wish or request which, under familiar rules of interpretation of testaments, are to be viewed as a precatory suggestion addressed to the conscience of the legatee but which is "not binding in law and cannot affect the validity of the bequest of the estate to him." See Succession of Hall, 141 La. 860, 75 So. 802, 803, and authorities there cited.
This case cannot be differentiated in principle from the leading case of Succession of Reilly, 136 La. 347, 67 So. 27, 28, in which, after a comprehensive review of the prior jurisprudence respecting prohibited substitutions and fidei commissa, it was found that the presence of a fidei commissum in a disposition does not necessarily render it void. There, the bequest under attack was somewhat similar to that in this matter, providing that the residue of the estate be given and bequeathed to Bishop Thomas Heslin "to be distributed as he sees fit among my people in Ireland and for the further education of Thomas Regan, * *". The court ruled that, while the language used might place the disposition in the category of a fidei commissum, this did not affect its validity as a universal legacy because, if the qualifying language respecting the distribution of the estate by the legatee was unlawful, it should be disregarded in view of Article 1519 of the Civil Code which declares that all impossible conditions, or those contrary to law or morals, contained in dispositions inter vivos and mortis causa, "are reputed not written". In so concluding, the court paraphrased the language of the opinion in Succession of Franklin, 7 La.Ann. 395, 414[2] to the effect that, when the words of the testament are sufficient to vest a legal title in the legatee, the fact that the testator directs the legatee to make a designated disposition of it does not affect the legality of the bequest. The court observed: "The conditions are not of the essence of the title conveyed before * * * and the title can stand without them. There is nothing in the testament to indicate that it was the testator's intention that, if the conditions should be regarded as not written, the bequest to his instituted sole heir and universal legatee should also be regarded as not written."
Applying the rationale of the decision in Succession of Reilly to the case at bar, it will be at once seen that the disposition is not conditional or in trust, but absolute, for the testator declares "I leave all I die possessed of" to Father Miller and the following language "to be disposed and administered according to my typed instructions" means a disposal and administration by Father Miller, as owner, in accordance with the testator's wishes.
In interpretation of acts of last will we are bound, under Article 1712 of the Civil Code, to ascertain the intention of the testator "without departing, however, from the proper signification of the terms of the testament" and it is our duty, under Article 1713, to construe the disposition in the sense so that it will be given effect, if possible. By following these fundamental precepts, we experience no difficulty in resolving that the bequest to Father Miller is unencumbered by conditions rendering it nugatory.
The district judge thought that the decisions in Succession of Reilly and Succession of Hall, supra, were distinguishable from the case at bar in that, in those matters, the directions or wishes of the testators were set forth in the wills whereas, here, they are contained in typed instructions which form no part of the testament. In our view, we fail to see how this difference affects the applicability here of the *846 principle upon which that jurisprudence is foundedthat is, when the disposition clearly confers title upon the legatee, all other wishes or requests by the testator as to the legatee's disposal of the legacy will be regarded as precatory suggestions or, if invalid, be reputed not written. Hence, it matters not whether these wishes are communicated to the legatee verbally, or in a separate typewritten document, or in the will itself in cases where the language of the will evidences an unconditional bequest. Compare Succession of Wallis, 203 La. 874, 14 So.2d 749.
The contention of plaintiff that the will is not complete in itself because the testator referred therein to certain typed instructions is without substance. The will is in olographic form, as prescribed by Article 1588 of the Code and institutes Father Miller as heir of the entire estate, by explicit language. The fact that the devise of the property is followed by words expressing the desire of the testator that the legacy is to be distributed and administered in accordance with the typewritten instructions does not render the will incomplete because, properly interpreted, these directions are reputed as not written. Hence, it is unnecessary to examine the typed instructions, which form no part of the will, to determine the intention of the testator.
The judgment appealed from is reversed and the suit is dismissed at the cost of Mrs. Vera M. Bevis.
HAMITER and HAWTHORNE, JJ., dissent.
HAWTHORNE, Justice (dissenting).
I disagree with the majority opinion because it is my view that the will is invalid as to form, since it is not wholly written, dated, and signed by the testator. The words "to be disposed and administered according to my typed instructions" cannot be disregarded or considered as not written. I do not consider these words to be precatory in nature. Precatory suggestions address themselves to the conscience of the donee or legatee and are mere requests or suggestions. The words "to be disposed and administered" are directory and mandatory in tenor, and reference has to be made to the typed instructions to ascertain what disposition is intended.
In Succession of Reilly, 136 La. 347, 67 So. 27, 30, cited and relied on in the majority opinion, it is pointed out that "* * * a bequest to one person for the benefit of another embodies either a substitution, which annuls the entire bequest, or only a fidei commissum, in which the stipulation pour autrui is reputed not written * *."
In the instant case, to determine whether the bequest to Father Miller was a fidei commissum or a prohibited substitution the majority of the court had to consider and refer to the typed instructions themselves, which provide that the sum of $3600.00 entrusted to the care of Father Miller constitutes a fund in trust to be dispensed to the testator's brother wisely and in accordance with his needs, etc., and the majority had to conclude that the instructions constitute a fidei commissum and not a prohibited substitution in order to strike from the will and consider as not written the words "to be disposed and administered according to my typed instructions". How can it be determined whether the disposition of the testator constituted a prohibited substitution or a fidei commissum except by reference to the typed instructions themselves? If these typed instructions had constituted a prohibited substitution, would the majority then say that the words could be disregarded, or would they annul the will in its entirety? These typed instructions, therefore, must be considered, and were considered, by this court in determining with certainty the testator's intention as to what disposition he wanted made of his property. The will in its entirety, in my opinion, should fall, for it is not in proper form for an olographic will since the instructions themselves which constitute a part of the will were not written in the will itself, and the will therefore was not wholly written, dated, and signed by the testator.
The holding of the majority opinion does not in any manner carry out the intention of the testator, as it makes the bequest to Father Miller absolute and institutes him as universal legatee, with utter disregard of the disposition to the testator's brother.
*847 The typed instructions make manifestly clear the fact that Father Miller was intended to be a trustee only, and was never intended to become absolute owner of the property.
The cases cited and relied on by the majority opinion have no application to a case such as this where a will refers to typed instructions, for in each of those cases the language interpreted to be a fidei commissum was written in the will itself, and this is not true in the instant case.
For these reasons I am of the opinion that the judgment of the district court should be affirmed.
I respectfully dissent.
NOTES
[1] These instructions read as follows:

"January 3rd 1946.
"To whom it May Concern:
"I hereby designate and appoint Rev. Wm. A. Miller, CSSR., with full seizin and without bond to act as administrator and as executor and in everything to act as I myself might act in all matters pertaining to anything of which I may die possessed or have in my keeping whether real, personal or mixed. I will that the thirty six hundred dollars that are entrusted to the care of the aforesaid Rev. Wm. A. Miller, CSSR., constitute a fund in trust to be dispensed to my brother Ben Girven wisely in accord with his needs by the same aforementioned Rev. Wm. A. Miller, CSSR., as administrator, executor, trustee, tutor or/and whatever word, legal word is required to express this office to be discharged without any bond whatsoever and with all the freedom that his judgment deems best. After my brother Ben's death, I will that whatever money remains from the afore-mentioned fund shall be applied for Low Masses at one dollar stipends for the Girven family and that all the circumstances of these Masses such as celebrant, color of vestments and time limit within which they are to be said shall be determined by the same afore mentioned Rev. Wm. A. Miller, CSSR.
"I will finally, that all these instructions be understood in submission to his legal rights of ownership.
"(Signed) Rev. Jos. A. Girven."
[2] The disposition was annulled in the Succession of Franklin because the title created by the will was "in trust".