528 F.2d 1076
 Louise LANGENDORF, Stella Trauth, Agnes Roniger, George G.
Braquet, Peter E. Braquet, Regina Braquet, Fannye
Braquet and Louis J. Braquet, Plaintiffs-Appellants
v.
The ADMINISTRATORS OF the TULANE EDUCATIONAL FUND and Tulane
University, Defendants-Appellees.
 No. 75--3410 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 March 19, 1976.
 
 Henry L. Klein, New Orleans, La., for plaintiffs-appellants.
 Wiley G. Lastrapes, Jr., New Orleans, La., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before THORNBERRY, MORGAN and RONEY, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 Plaintiffs seek to half the construction of a nondemominational chapel on the campus of Newcomb College, a part of the Tulane University system, as a violation of the Establishment Clause of the United States Constitution. We affirm the dismissal by the district court on the ground that plaintiffs have no standing to bring the suit.
 
 
 2
 The ultimate goal of plaintiffs is to obtain the $300,000 estate of James Mitchell Rogers. As the collateral heirs of Rogers, plaintiffs have twice before tried to obtain the estate which, by will, was left entirely to Tulane University for the building of a nonsectarian chapel on the Newcomb campus.[1] The chapel memorializes Myra Clare Rogers, who taught at Newcomb College.
 
 
 3
 Abandoning their role as heirs, but still desirous of thwarting the legacy, plaintiffs brought this taxpayer suit in federal court. Here they allege the construction of the nonsectarian chapel by Tulane, a state institution receiving state and federal funds, will result in the misuse of public land and funds to maintain the chapel in violation of 'the sacred principle of separation of Church and State as enunciated by the First Amendment to the United States Constitution and Article One, Section 8 of the Louisiana Constitution.'[2] The district court granted a motion to dismiss grounded on plaintiffs' lack of standing and want of allegation of jurisdictional amount.
 
 
 4
 The principles governing standing in taxpayer's suits were stated by the Supreme Court in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). That case involved a taxpayer's challenge to the constitutionality of a federal statutory provision which permitted disbursement of federal funds to finance regular instruction and purchase of educational materials for use in parochial schools. The Court stated that to determine standing it is necessary to look to substantive issues in the litigation, not to evaluate ultimate merit, but to determine whether there is a logical nexus between the status asserted by the taxpayer and the claim sought to be adjudicated. Flast held that a federal taxpayer has standing to assert that a specific expenditure of federal funds violates the Establishment Clause of the First Amendment.
 
 
 5
 In the instant case, plaintiffs do not challenge a specific federal statute or appropriation. Neither the United States nor any agency or officer of the Government are parties to this suit. The direct thrust of the suit is to enjoin the expenditure of a private legacy which Tulane can use but for one purpose. No taxpayers' funds are directly involved. Plaintiffs allege only generally that federal and state funds are used to support and maintain the University.
 
 
 6
 Applying the Flast formulation, the Court in Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) held against an association of present and former members of the Armed Forces Reserves because it failed to establish the logical nexus between the taxpayers' status and the claim that numerous Congressmen were violating the Constitution by being members of the Reserves while holding congressional office. In Schlesinger, as in this case, there can be no 'taxpayer standing under Flast v. Cohen . . . since there is simply no challenge to an exercise of the taxing and spending power.' 418 U.S. at 229, 94 S.Ct. at 2936 (Stewart, J., concurring).
 
 
 7
 The district court noted that plaintiffs 'do not allege, nor can they show, that the alleged unconstitutional action by Tulane of which they complain will affect them in any way, other than as an abstract injury which they share in common with all other taxpayers.' Cf. Doremus v. Board of Education, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). Plaintiffs argue that their interest is far from abstract because it is well known that they 'have a direct, personal stake in the outcome; the proceeds of the Estate of James Mitchell Rogers, which is well over $300,000.00.'
 
 
 8
 Such argument, aside from the lack of supportive allegation in the complaint, cannot prevail. In United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), the Supreme Court dealt in part with a contention that taxpayers may assert interests other than as mere taxpayers in order to establish standing. The court of appeals found standing on that theory, relying on Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) for support. The Supreme Court found this reliance to be misplaced. The Court turned aside contentions that standing in a taxpayer suit may be strengthened by additional interest in the outcome. In a footnote the Court recognized that Data Processing was a suit alleging competitive economic injury because of an adverse ruling by the Comptroller of the Currency. But Data Processing was quite different from Richardson. The following quote from Richardson is helpful in illustrating this difference:
 
 
 9
 We recognized standing (in Data Processing) for those private business proprietors who were engaged in selling the same kind of services the Comptroller allowed banks to sell; we held only that the claims of impermissible competition were 'arguably . . . within the zone of interests protected' by § 4 of the Bank Service Corporation Act. 397 U.S., at 156 (90 S.Ct. 827 at 831). In short, Congress had provided competitor standing.
 
 
 10
 418 U.S. at 176 n. 9, 94 S.Ct. at 2946. There was no statute to aid the taxpayers in Richardson. There is no statute giving standing to complainants in the instant case. Therefore, standing must be judged on plaintiffs' ability to satisfy the Flast v. Cohen requirements. The economic interest aspects of Doremus v. Board of Education, supra, must go to the plaintiffs' economic interest, as taxpayers.
 
 
 11
 As collateral heirs, the plaintiffs may have a collateral economic interest in the outcome of the suit surmounting their interest as taxpayers, but where they assert a cause of action on which they can prevail only as taxpayers, requisite standing must come from their taxpayers status, or not at all. That standing being absent from this suit, it was properly dismissed.
 
 
 12
 The district court also stated that plaintiffs did not allege the amount in controversy to exceed the requisite jurisdictional amount. Having affirmed the dismissal for lack of standing, we need not reach the jurisdictional amount issue.
 
 
 13
 Affirmed.
 
 
 
 *
 Rule 18, 5th Cir., see Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I
 
 
 [1]
 The first suit was an outgrowth of the succession proceeding itself. There, Tulane brought a declaratory judgment action to determine the validity of a codicil which had requested that the testator's real property not be sold. The Louisiana Fourth Circuit Court turned aside arguments by the collateral heirs that the testator intended to revoke the bequest to Tulane. Rather, the court found that th codicil language--'I positively donot wish my real estate sold'--to be a provision prohibiting alienation and in contravention of Louisiana Civil Code Article 1519. The codicil was thus found to be null and vod. Succession of Rogers, 138 So.2d 251 (La.Ct.App.1962)
 The second suit centered on Tulane's allegdly not constructing the chapel timely. The Louisiana Fourth Circuit turned back the challenge and gave Tulane twenty-four months in which to complete construction. In doing so the Court reemphasized that it should not thwart the testator's clear intent and desire that a chapel be built in memory of his sister. Braquet v. Administrators of the Tulane Educational Fund, 304 So.2d 720 (La.Ct.App.), cert. denied, 305 So.2d 538 (La.1974).
 2 U.S.Const. Amnd. I provides in part:
 Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ..
 Louisiana State Constitution, Art. 1, § 8 reads:
 Freedom of Religion
 Section 8. No law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof.